UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MELISSA CHEN, <br> DARIO SALAS, <br><br>       Plaintiffs, <br><br>       v. <br><br> GENESCO, INC., <br> HAT WORLD INC. <br>   d/b/a LIDS, <br><br>       Defendants. | No. 1:18-cv-00690-SEB-TAB |

**ORDER GRANTING PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT, SERVICE PAYMENTS, AND ATTORNEYS' FEES AND COSTS [DKT. 113]**

Now before the Court is Plaintiff Dario Salas's unopposed motion to approve the parties' settlement of this putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203 *et seq.* Dkt. 113. For the reasons given below, the motion is **GRANTED**.

**Background**

Plaintiffs Melissa Chen ("Chen") and Mario Salas ("Salas") brought this action on behalf of themselves and others similarly situated, whom we collectively refer to as "Salas" unless context requires otherwise. Defendants Genesco, Inc., and Hat World, Inc., do business under the name "Lids," and are so referred throughout. The complaint alleges that Chen was employed as a "Store Manager" at a Lids store in Chicago from November 2015 to January 2016. Salas was employed in a similar position at a Lids store

1

in New York City from January 2011 to September 2015. At both stores, and at Lids stores nationwide, Lids classified Store Managers as exempt from the FLSA's overtime-pay rules, and paid them no wages for work they performed in excess of forty hours per week, though Store Managers primarily performed nonexempt work. This lawsuit seeks to recover the unpaid overtime compensation Salas alleges he is due under the FLSA.

Salas originally brought this action in the Northern District of Illinois on May 19, 2017. Dkt. 1. It was transferred to our Court pursuant to Lids's motion on March 7, 2018. Dkt. 44. Chen was determined to be subject to a binding arbitration agreement and ordered to arbitration on June 11, 2018. Dkt. 83. We simultaneously stayed her claims, pending the outcome of that proceeding. *Id.* On July 20, 2018, Salas moved for a conditional certification of a nationwide collective action including Lids Store Managers and for court approval of the proposed notice to its members. Dkt. 84. That motion had not been ruled upon prior to the August 28, 2018, notification that a settlement had been reached between the parties. Accordingly, the motion was denied as moot along with all other pending motions, all without prejudice, and all pending deadlines were vacated. Dkt. 100.

Salas moved for settlement approval on October 23, 2018. Dkt. 105. The parties stipulated that although a binding settlement had been reached, certain terms were disputed, specifically with regard to the procedures for notifying collective members of their right to opt into the action and recover a *pro rata* share of the $1,200,000 settlement fund. However, because "Salas's motion [ran] aground on an antecedent issue" that had been unaddressed by the parties, we denied the motion without resolving the dispute or

otherwise assessing the fairness of the settlement agreement.[1] Specifically, we ruled that the parties' proposed settlement agreement had not addressed the necessary issue of certifying its collective members and that Salas had not carried his burden of showing that the proposed collective members were similarly situated. Accordingly, we denied Salas's motion for settlement approval. Dkt. 112.

On March 22, 2019, Salas filed his Unopposed Renewed Motion for Approval of Settlement, Service Payments, and Attorneys' Fees and Costs (the "Renewed Motion"), again seeking the Court's approval of the parties' newest settlement agreement. Dkt. 113. As discussed by Salas in his Renewed Motion, the parties reportedly resumed settlement negotiations following our prior Order and resolved the deficiencies that had been identified by the Court. We are informed further that the parties also have now reached "complete agreement" as to the terms of the settlement and notice program.

## **Analysis**

*I.     The Renewed Motion Cures the Defects of the First Settlement Agreement*

As discussed in our previous Order, the FLSA "gives employees the right to bring . . . claims [under it] through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (quoting 29 U.S.C. § 216(b)). Such a collective action is "similar to, but distinct from," a class action under Federal Rule of Civil Procedure 23, principally in that collective-action plaintiffs must opt-in to be bound by the action, whereas class-action

---

[1] FLSA collective action settlement agreements require judicial approval. 29 U.S.C. § 216(b)-(c); *Campbell*, WL 1424417, at *1.

3

plaintiffs must opt-out in order not to be bound. *Id. See* 29 U.S.C. § 216(b) (requiring plaintiff's "consent in writing" to become party to suit).

"[N]either the FLSA nor the Seventh Circuit has set forth criteria for determining whether employees are 'similarly situated.'" However, district courts in this Circuit and nationally "have settled on a two-step procedure" for addressing this inquiry. *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) (internal quotations, alteration, ellipsis, citation omitted). *Also Knox v. Jones Grp.*, 208 F. Supp. 3d 954, 958 (S.D. Ind. 2016) (Baker, J.) (mag. j. op.); *Resendiz-Ramirez v. P & H Forestry*, LLC, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007) ("prevailing approach"). As we previously explained:

> A court may not approve a proposed settlement of a collective action without making some finding that the plaintiffs are similarly situated. Courts generally undertake such inquiry in ruling on motions for settlement approval as a matter of course . . . Our sister court for the Northern District of Indiana has held that, "[w]here the parties reach settlement after a court has conditionally certified a collective class, the court still must make some final class certification before approving a collective action settlement." One court declined to reconsider its approval of an FLSA settlement where there had been prior conditional but not final certification of the collective . . . but we are aware of no case in which the court dispensed with all forms of certification whatever.

[Dkt. 112, at 5] (internal citations omitted). Here, the collective action was never conditionally certified, in part because the parties had omitted from their filings with the Court any mention of the need for final certification. Salas nonetheless suggested that the putative collective action members were *not* similarly situated. His brief and declaration in support thereof posited that the collective defined in the first settlement agreement was not the "real" collective; that the "real" collective was composed of Store Managers who

4

worked more than forty hours per week without overtime pay "during the period from August 30, 2015, to October 30, 2016." Though Salas acknowledged that these dates were "not explicitly set forth" in the first proposed settlement agreement, he failed to mention that these dates directly contradicted those set forth in the first settlement agreement, which defined the collective period as "the three-year period preceding August 30, 2018," that is, from August 30, 2015, to August 30, 2018.

Consequently, we rejected Salas's definition of the collective for two reasons. First, our ruling necessarily focused on the agreement actually made and executed, not some other "agreement" referenced by the parties' in their briefing. Second, as fully explained in our previous entry, we found it highly unlikely that Store Managers employed before October 30, 2016, were similarly situated to Store Managers employed after October 30, 2016, given the October 20, 2016 change in Lids's policy of classifying Store Managers as exempt. These defects prevented judicial approval of the settlement agreement.

In his Renewed Motion, Salas states that the parties have now "resolved the discrepancy in the proposed collective[.]" The currently proposed collective, as set forth both in Salas's brief and the parties' settlement agreement, limits the proposed settlement collective to Store Managers who were classified as exempt during the period from August 20, 2015 to October 30, 2016. Accordingly, "Eligible Settlement Collective Members" are "current and former employees employed by Defendants in the position of Store Manager during the Relevant Period (August 30, 2015 and October 30, 2016), who

5

worked more than 40 hours in a workweek but did not receive an overtime premium for such hours and did not sign an arbitration agreement."[2]

We agree with Salas that the Eligible Settlement Collective Members are now similarly situated, which tees up the collective for final judicial certification. The proposed collective now encompasses individuals who were uniformly subject to Lids's policy of misclassifying them as exempt and who, thus, did not receive required overtime wages. The parties further agree that the Eligible Settlement Collective Members shared the same primary duties such that Lids's defenses would apply equally to all Plaintiffs.

Accordingly, Salas has now succeeded in showing that the proposed collective members are similarly situated, and final certification of the collective is appropriate. *Clemens v. Stericycle*, No. 1:15-cv-01432-SEB-MJD, 2016 WL 1054605, at *2 (S.D. Ind. Feb. 17, 2016) (Dinsmore, J.), *report and recommendation adopted*, 2016 WL 1045550, at *1 (S.D. Ind. Mar. 15, 2016) (Barker, J.) (holding that collective action plaintiff must show that collective members were "victims of a common policy or plan"); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994 (N.D. Ind. 2010) (concluding that final certification is appropriate where "there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies," and the defendants' "defenses would apply to *all* Plaintiffs").

We thus shall undertake our review of the fairness of the settlement agreement.

---

[2] This group includes 686 current and former employees.

## II. The Settlement Agreement is Fair & Reasonable

As previously noted, FLSA collective action settlement agreements require judicial approval.[3] "Normally, a settlement is approved where it is the result of 'contentious arm's length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Campbell v. Advantage Sales & Mktg. LLC*, No. 1:09-CV-01430-LJM, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (*quoting Burkholder*, 750 F. Supp. 2d at, 995); *Sanders v. Connan's Paint & Body Shop, LLC*, No. 1:14-CV-01725-SEB, 2015 WL 5692542, at *4 (S.D. Ind. Sept. 28, 2015). Courts are to determine the fairness of a collective action settlement agreement by assessing "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Burkholder*, 750 F. Supp. 2d at 995.

The Settlement Agreement at issue here establishes a fund of $1.2 million (the "Fund") from which Eligible Settlement Collective Members can claim settlement awards. Settlement Collective Members will be eligible to receive a settlement payment based on an allocation formula that takes into account the number of weeks each person

---

[3] "A one-step settlement approval process is appropriate" in FLSA collective actions. *Knox*, 2018 WL 3834929 (citing multiple cases adopting a one-step approach). "In other words, the Court can review and approve the settlement agreement without holding a final fairness hearing or adhering to the other requirements contained in Rule 23 of the Federal Rules of Civil Procedure." *Heuberger*, 2019 WL 3030312, at *2. "This is due to the fundamental differences between 'opt-in' collective actions and 'opt-out' class actions governed by Rule 23[.]" *Heuberger*, 2019 WL 3030312, at *2.

worked during the relevant time period for which they were not paid overtime premium earnings for the hours they worked that exceeded 40 during those weeks. The parties have arranged for a Settlement Administrator[4] to mail notices of the settlement, claim forms, and postage prepaid return envelopes to all Eligible Settlement Collective Members within 15 days of the Court's approval of the settlement agreement. A reminder postcard will also be mailed 15 days after the original settlement notices are mailed. Eligible Settlement Collective Members will generally be allowed 30 days to submit Claim Forms. The Settlement Administrator will then mail checks to participating members within 30 days, who will be allowed 120 days within which to negotiate their settlement checks

This agreement was reached following a comprehensive pre-suit investigation, private mediation and related discovery, contested dispositive and non-dispositive motions, and extensive settlement discussions during which the parties raised serious/disputed questions of law and fact. In such circumstances, district courts typically have no trouble concluding that a settlement agreement was the result of "contentious arms-length negotiations." *Heuberger v. Smith*, No. 3:16-CV-386 JD, 2019 WL 3030312, at *3 (N.D. Ind. Jan. 4, 2019; *McAfee v. Hubbard*, No. 14-CV-1010-NJR-RJD, 2017 WL 1479304, at *3 (S.D. Ill. Apr. 25, 2017); *Sanders*, 2015 WL 5692542, at *4. Additionally, the parties agree that a trial on the merits would be expensive and time-consuming for both sides, and would involve significant risks for Salas in particular in

---

[4] The Settlement Administrator will be selected by Plaintiff's counsel subject to Defendant's concurrence.

establishing both liability and damages. In light of those risks, agreeing to a settlement "is not indicative of overreaching by the employer or waiver of rights by the employees, but of a reasoned and counseled decision by both sides." *Heuberger*, 2019 WL 3030312, at *3; *Campbell*, 2012 WL 1424417, at *2.

The Renewed Motion also reflects the parties' compromised agreement as to the most effective method of notifying Eligible Settlement Collective Members of the settlement and their rights. The proposed Settlement Notice and Claim Form contains all the information on which the Court would typically rely in granting its approval: it informs Eligible Settlement Collective Members of the specific terms of the settlement (including the allocation formula), it explains the process by which members may participate (or not participate) in the settlement, it discloses the settlement payment amount to which each is entitled, and informs the members Salas's request for attorneys' fees and costs. *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016); *Zolkos v. Scriptfleet, Inc.*, No. 12 CIV. 8230 GF, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014). This proposed notice sufficiently informs Eligible Settlement Class Members as to the settlement and their rights and, accordingly, warrants our approval.

The parties have additionally requested judicial approval of specific payments to the named and early opt-in plaintiffs. Specifically, they propose a payment of $8500 to each of the following Plaintiffs: Dario Salas, Melissa Chen, Lindsay Dais, and Eric Holliday. And $2500 to each of the following Plaintiffs: Kristian Allen, Cesar Coto, Jose

9

Rosado, Joann Stephens, Zaquetta Thompson, and Robin Young. Consistent with Seventh Circuit practice, these payments are sought here:

> Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit. In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). *See also Heekin v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012).

These plaintiffs, we are informed, engaged in significant litigation activity (including participating in the pre-suit investigations, assisting with the preparation of discovery responses, reviewing pleadings, and participating in depositions) for their benefit as well as the benefit of the collective, expending time and other resources, and undertaking direct and indirect risks, such as possible retaliation. These contributions justify the requested payments, the specific amounts of which having been tailored to reflect the kinds and amounts of investments made by each of them. *Knox*, 2017 WL 3834929, at *2; *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011). We conclude that the amounts requested are reasonable, both in terms of the outlays to be made to each plaintiff and the percentage (3.38%) they cumulatively represent of the total recovery amount. *Koszyk*, 2016 WL 5109196, at *3; *Chesemore v. All. Holdings, Inc.*, No. 09-CV-413-WMC, 2014 WL 4415919, at *12 (W.D. Wis. Sept. 5, 2014), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016); *Heekin*,

2012 WL 5878032, at *1; *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011).

Finally, we address Salas's request for attorneys' fees and costs. Salas seeks permission to allocate one-third of the Fund as attorneys' fees, plus a reimbursement of $14,338.47 to him for attorneys' costs and expenses he personally incurred in litigating this matter. District court judges are allowed considerable discretion in deciding whether to apply the lodestar approach to attorney fees awards or the percentage approach. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). We hold here that the percentage approach is reasonable, as the parties have advocated.

The award of attorneys' fee is to reflect "the market price for legal services, in light of the risk of nonpayment, and the normal rate of compensation in the market at the time." *Campbell*, 2012 WL 1424417, at *2. Here, the request of one-third of the amount of the Fund is in line with terms regularly approved by federal courts in our Circuit. Additionally, we are aware that lawyers practicing employment law in this region routinely contract for fees equaling one-third of the overall recovery amount. *Campbell*, 2012 WL 1424417, at *2; *Brewer v. Molina Healthcare, Inc.*, No. 1:16-CV-09523, 2018 WL 2966956, at *3 (N.D. Ill. June 12, 2018); *Heekin*, 2012 WL 5878032, at *3; *Williams v. Rohm & Haas Pension Plan*, No. 4:04-CV-0078-SEB-WGH, 2010 WL 4723725, at *1 (S.D. Ind. Nov. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir. 2011). Our conclusion is buttressed by the fact that this percentage was agreed upon at the outset of this litigation before the amount of the final recovery was settled. The Seventh Circuit has recognized that counsel accept a risk of nonpayment when they embark on representation of a class

of plaintiffs on a contingency fee basis. *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007); *see also Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 WL 5109196, at *4. We therefore conclude that Salas's request for attorneys' fees is reasonable under all the appropriate criteria. His request for reimbursement of costs and expenses in the amount of $14,338.47 likewise is reasonable, representing counsels' out-of-pocket costs and expenses incidental and necessary to litigating this matter, including coverage of *pro hac vice* admission fees, postage, mediator's fees, court fees, and research costs. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999); *Cheesman v. Nexstar Broad. Grp., Inc.*, No. 2:07CV360-RLY-WGH, 2008 WL 2225617, at *3 (S.D. Ind. May 27, 2008).

## CONCLUSIONS

For the reasons set forth herein, the Court hereby **GRANTS** Plaintiff's Unopposed Renewed Motion for Approval of Settlement, Service Payments, and Attorneys' Fees and Costs, Dkt. 113, and orders as follows:

1. The Court finds that the proposed Settlement Agreement is fair, reasonable, and just. It is therefore approved.
2. This case is certified, for settlement purposes only, as a collective action under Section 216(b) of the Fair Labor Standards Act.
3. Plaintiff's proposed Notice of Settlement and Claim Form and Reminder Postcard, and the plan for their distribution, are each approved.

4. The payments to the named individual plaintiffs in the specific amounts are approved.

5. Plaintiff's request for payment of attorneys' fees and out-of-pocket costs and expenses is granted.

6. Upon dismissal without prejudice of this case, the Court shall retain jurisdiction to enforce the settlement and to permit the filing of Claim Forms obtained during the Claim Period. Following completion of all the steps necessary to fully effectuate this settlement, the dismissal shall be converted to a dismissal with prejudice.

IT IS SO ORDERED.

Date: 1/22/2020

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Michael C. Danna
OUTTEN & GOLDEN, LLP
mdanna@outtengolden.com

Bonnie Keane DelGobbo
BAKER & HOSTETLER LLP
bdelgobbo@bakerlaw.com

Scott D. Gilchrist
COHEN & MALAD LLP
sgilchrist@cohenandmalad.com

Joel Griswold
BAKER HOSTETLER LLP
jcgriswold@bakerlaw.com

Camar R. Jones
SHAVITZ LAW GROUP, P.A.
cjones@shavitzlaw.com

Christopher McNerney
OUTTEN & MCNERNEY LLP
cmcnerney@outtengolden.com

Gregg I. Shavitz
SHAVITZ LAW GROUP, P.A.
gshavitz@shavitzlaw.com

Richard E. Shevitz
COHEN & MALAD LLP
rshevitz@cohenandmalad.com

Justin Mitchell Swartz
Outten & Golden LLP
jms@outtengolden.com